**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA A. J.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21 C 4093** |
| **v.** | ) | |
| | ) | **Magistrate Judge Finnegan** |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Maria A. J. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff protectively filed for DIB on October 20, 2017, alleging disability since July 11, 2016 due to lumbar pain and a back injury. (R. 183, 227). Born in 1957, Plaintiff was 59 years old as of the alleged disability onset date making her a person of advanced age

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

(age 55 or older).  20 C.F.R. § 404.1563(e).  She subsequently changed categories to a person closely approaching retirement age (age 60 or older).  *Id.*  Plaintiff attended school through either the fifth or seventh grade, speaks Spanish but is able to understand some simple English, and lives in a house with her daughter.  (R. 41-42, 228).  She spent two years working as a machine operator before taking a job as a hotel housekeeper in May 2004.  (R. 43-44, 246).  Plaintiff held that position for 12 years until she suffered a work-related back injury on April 10, 2016.  (R. 309).  The company was not able to accommodate her light duty status and so let her go on July 11, 2016.  (R. 42-43).  Plaintiff has not engaged in any substantial gainful activity since that date.

The Social Security Administration denied Plaintiff's application initially on January 9, 2018, and again upon reconsideration on June 19, 2018.  (R. 56-87).  She filed a timely request for a hearing and appeared before administrative law judge Laurie Wardell (the "ALJ") on January 13, 2021.[2]  (R. 38).  The ALJ heard testimony from Plaintiff, who was represented by counsel and testified with the assistance of a Spanish interpreter, and from vocational expert Charles McBee (the "VE").  (R. 40-55).  On February 11, 2021, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, peripheral neuropathy, and obesity are all severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 26-27).

After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain postural restrictions.  (R. 27-32).  The ALJ accepted the VE's testimony that a person with

---

[2]       The hearing was held telephonically due to the COVID-19 pandemic.

Plaintiff's background and this RFC can perform Plaintiff's past work as a housekeeping cleaner.  As a result, the ALJ concluded that Plaintiff was not disabled at any time from the July 11, 2016 alleged disability onset date through the date of the decision.  (R. 32-33).  The Appeals Council denied Plaintiff's request for review on June 9, 2021.  (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g).  *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); *Payne v. Colvin*, 216 F. Supp. 3d 876, 880 (N.D. Ill. 2016).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) made a flawed RFC determination; and (2) erred in evaluating her subjective statements regarding the limiting effects of her symptoms.  As discussed below, this Court finds that the case must be remanded for further consideration of Plaintiff's RFC.

## DISCUSSION

**A.     Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3]  20 C.F.R. § 404.1505(a).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can

---

[3]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

**B.    Analysis**

**1.    RFC Determination**

Plaintiff argues that the case must be reversed or remanded because in making the RFC determination, the ALJ improperly relied on an outdated state agency medical opinion. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D.

Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)). "Both the RFC assessment and the hypothetical question posed to the [VE] must include all of a claimant's limitations supported by the medical record." *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *2 (N.D. Ill. July 22, 2022) (quoting *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)).

The ALJ found Plaintiff capable of performing light work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. (R. 27). This RFC mirrors the limitations set forth in the December 23, 2017 opinion from state agency consultant Lenore Gonzalez, M.D., who evaluated Plaintiff's claim at the initial level of review. The ALJ found Dr. Gonzalez's opinion persuasive because it was "consistent with the medical evidence of record as a whole, including evidence received at the hearing level showing persistent back pain but sporadic and conservative treatment." (R. 31, 62). Plaintiff argues that the ALJ erred in relying on this RFC because Dr. Gonzalez did not have access to significant new evidence from 2020. (Doc. 17, at 13-14; Doc. 20, at 4-5). This Court agrees.

The record shows that Plaintiff first injured her back at work in 2008. (R. 309). Several years later, in 2015, Plaintiff received a series of five lumbar trigger point injections from orthopedic surgeon Mitchell L. Goldflies, M.D. (R. 367-71). Plaintiff continued working until April 10, 2016, when she reinjured her back while pushing a 200-pound linen cart. (R. 411). After a hospital visit, Plaintiff was placed on light duty status before being let go on July 11, 2016, the alleged disability onset date. (*Id.*).

5

That same day, Plaintiff had an Independent Medical Examination with orthopedic surgeon Jay L. Levin, M.D. (R. 29, 411). Plaintiff reported that she constantly experienced hip and low back pain that rose to a level of 7/10 at its worst. The pain woke her up at night and she received only mild relief from medications, which included naproxen and hydrocodone. (R. 29, 412). On exam, Plaintiff walked with a reciprocal toe/heel gait with a short stride length due to central and right lower lumbar discomfort. She also exhibited midline upper lumbar tenderness extending to the lower lumbar area, and straight leg raise tests elicited pain bilaterally. (R. 29, 412-13). X-rays taken that day showed mild degenerative disc changes at T12-L1, L1-L2, L2-L3, and L3-L4. There was also retrolisthesis at L1-L2 and L2-L3, as well as minimal spondylolisthesis at L5-S1. (R. 413). Dr. Levin recommended that Plaintiff have an MRI of the lumbar spine. (*Id.*).

Plaintiff returned to Dr. Goldflies on July 22, 2016 with worsening back pain over the previous three months that was not relieved with Norco and ibuprofen. (R. 29, 363, 365). Dr. Goldflies instructed Plaintiff to wear a back brace and return in six weeks (R. 366), though there are no further notes from Dr. Goldflies in the record. The next day, on July 23, 2016, Plaintiff started treating with chiropractor Phillip Gattas, D.C., and attended 20 sessions with him through September 14, 2016. (R. 29, 313-14, 328, 330-50). She also had 14 physical therapy ("PT") sessions for her left knee during the same period. (R. 29, 318-24).

In the meantime, on August 4, 2016, Plaintiff had an MRI that showed moderate degenerative changes, most evident at L1-L2 and the lower lumbar facet joints. (R. 29, 358-59). A few weeks later, on August 29, 2016, Plaintiff consulted orthopedic surgeon Jeffrey K. Wingate, M.D., for ongoing low back pain. (R. 29, 408). On exam, Plaintiff was

wearing a back brace and walking with a cane in the left hand.  Her gait was antalgic and she had decreased sensation to the right medial thigh and right medial leg.  A straight leg raise test on the right reproduced pain but was negative on the left.  Plaintiff also exhibited sciatic notch tenderness to direct palpation on the left side.  Based on this exam and a review of the August MRI, Dr. Wingate assessed multilevel degenerative listhetic and spondylolisthetic change, and multilevel disc degeneration with central and lateral recess stenosis.  He recommended anti-inflammatory medication, muscle relaxants, PT, and injections, but did not believe surgical intervention was warranted.  (R. 29, 409).

Plaintiff started treating with pain management specialist Krishna Chunduri, M.D., on September 12, 2016.  She described her lower back pain as aching, throbbing, and stabbing at a level of 7-8/10, and said that standing, sitting, and bending made the pain worse.  (R. 309).  An exam showed a mildly antalgic gait, reduced range of motion, and a positive straight leg raise test on the back only.  (R. 29, 309).  Dr. Chunduri assessed lumbar spondylosis and lumbago.  He noted that Plaintiff had undergone "extensive conservative management without significant improvement" and recommended that she have diagnostic medial branch blocks at L4-L5 and L5-S1.  (R. 29, 310).  Dr. Chunduri completed a Work Status/Restrictions form stating that Plaintiff was totally disabled from September 12 through 19, 2016.  (R. 31, 312). He administered the diagnostic medial branch blocks on September 15, 2016.  (R. 29, 414).

Plaintiff did not receive further treatment until September 18, 2017.  At a follow-up appointment with Dr. Chunduri that day, Plaintiff continued to complain of ongoing pain in her lower back with no improvement on meloxicam.  (R. 29, 311).  She said that she had been unable to obtain insurance authorization for an additional series of diagnostic medial

branch block injections so wanted further medication management. On exam, Plaintiff had a normal gait but reduced range of motion, a positive straight leg raise test on the right, and tenderness to palpation. Dr. Chunduri refilled Plaintiff's meloxicam and indicated that he would try to obtain approval for the injections. (*Id.*). Shortly thereafter, on December 23, 2017, Dr. Gonzalez opined that Plaintiff is capable of a reduced range of light work. (R. 62).

The next available record is from May 11, 2018, when Plaintiff had an Internal Medicine Consultative Exam with Liana G. Palacci, D.O. (R. 30, 372-75). Plaintiff told Dr. Palacci that her lower back pain was exacerbated by prolonged standing and walking but was alleviated with meloxicam. (R. 30, 372). A physical exam revealed: normal upper and lower extremity strength; normal range of motion in the cervical spine, lumbar spine, hips, knees, and ankles; a normal, non-antalgic gait; negative straight leg raise tests; and no difficulty getting on and off the exam table, walking on toes/heels, tandem walking, or squatting and rising. (R. 30, 374). Dr. Palacci assessed complaints of low back pain with no objective findings. (R. 375). The following month, on June 15, 2018, state agency consultant Marion Panepinto, M.D., evaluated Plaintiff's claim on reconsideration and concluded that there was insufficient evidence to support that Plaintiff suffers from any severe impairments. (R. 71-77).

Throughout 2019, Plaintiff had regular appointments with her family medicine doctor, Ezequiel Mendez-Huerta, M.D., but she did not mention any problems with her back. (R. 384, 386, 388-90). FN: At the January 13, 2021 hearing before the ALJ, Plaintiff explained that she was "seeing a specialist for that." (R. 49). Then on November 8, 2019, Plaintiff started seeing orthopedic surgeon Kevin Koutsky, M.D. (R. 415). Dr.

8

Koutsky assessed L4-L5 and L5-S1 radiculopathy and sent Plaintiff for an MRI. (*Id.*).

That January 15, 2020 test showed: disc desiccation throughout the lumbar spine; grade

1 retrolisthesis of L1 over L2; reduced intervertebral disc height at L1-L2; a 3 mm diffuse

disc protrusion with effacement of the thecal sac at L1-L2; a 3 mm diffuse disc protrusion

with effacement of the thecal sac at L2-L3; a 3 mm diffuse disc protrusion with effacement

of the thecal sac at L3-L4 with bilateral neuroforaminal narrowing that effaces the left and

right L3 exiting nerve roots; a 3 mm diffuse disc protrusion with effacement of the thecal

sac at L4-L5; and a 3 mm diffuse disc protrusion with effacement of the thecal sac at L5-

S1. (R. 30, 417). An EMG-Nerve Conduction Study performed on February 19, 2020

revealed early peripheral polyneuropathy. (R. 30, 418-19).

Plaintiff returned to Dr. Koutsky on March 6, 2020, still complaining of lower back

pain radiating down her right lower extremity with some numbness, tingling, and

weakness. (R. 30, 422). On exam, Plaintiff had a positive straight leg raise test on the

right, as well as paralumbar muscle tenderness and spasms to palpation with limited

range of motion. Dr. Koutsky concluded that Plaintiff had failed conservative

management and required decompression and stabilization surgery, but they needed to

obtain authorization from the insurance provider for the procedure. (*Id.*). That

authorization had not come through as of Plaintiff's next appointment on May 1, 2020

(held telephonically). (R. 424). Dr. Koutsky instructed Plaintiff to discontinue meloxicam

and start taking Celebrex and Lyrica while they waited. He also prescribed lidocaine

patches. (*Id.*).

After discussing this evidence, the ALJ considered the opinions of record and

concluded that the June 2018 assessment from Dr. Panepinto that Plaintiff has no severe

9

impairments was outdated and so not persuasive. (R. 31). As the ALJ explained, Dr. Panepinto "was not able to review records from 2020 showing neuropathy and recommending surgery for [Plaintiff's] back condition." (*Id.*). At the same time, the ALJ adopted in full the even earlier December 2017 RFC from Dr. Gonzalez, who also lacked access to the 2020 records. The ALJ failed to provide any explanation for these divergent conclusions or articulate how she determined that the new evidence from 2020 supported an RFC for light work.

The Seventh Circuit has "said repeatedly that an ALJ may not 'play[ ] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). Here, the only physician who reviewed the January 2020 MRI and the February 2020 EMG was Dr. Koutsky, but he did not offer an opinion as to Plaintiff's RFC or indicate that she is capable of engaging in light work. To the contrary, Dr. Koutsky found that Plaintiff now requires surgical intervention for her conditions. It is thus reasonable to conclude that the new tests may have "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by the non-examining physician and by evaluating h[er]self the significance of [the subsequent] report." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (internal quotations omitted). *See also Tobias B. v. Kijakazi*, No. 20 C 2959, 2022 WL 4356857, at *5 (N.D. Ill. Sept. 20, 2022) (citing *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)) (remand required where the ALJ made "her own interpretation of medical evidence, which is an impermissible source.").

The Commissioner responds that the ALJ had discretion to determine the amount of evidence to gather, and faults Plaintiff for failing to identify a medical opinion that supports her claim of disability. (Doc. 19, at 11) (citing *Luna v. Shalala*, 22 F.3d 687, 692-93 (7th Cir. 1994) and *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)). Both of these arguments fail. First, "[i]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations." *See Nichole M. S. v. Saul*, No. 19 C 7798, 2021 WL 534670, at *7 (N.D. Ill. Feb. 12, 2021) (quoting *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012)). Here, the ALJ herself acknowledged that the evidence from 2020 was significant enough to justify rejecting Dr. Panepinto's opinion, and so needed to articulate why it did not have any bearing on Dr. Gonzalez's even earlier RFC assessment. In addition, "the [claimant's] burden is to produce evidence, not opinions." *Id.* (quoting *Kemplen*, 844 F. App'x at 887). Plaintiff met her burden by coming forward with medical evidence showing back problems and peripheral neuropathy warranting surgical intervention as of 2020. The ALJ had an obligation to seek an additional medical evaluation of Plaintiff's condition to properly assess the exertional and postural restrictions she required.

The Court offers no opinion as to the extent and limiting effects of Plaintiff's spinal impairments, or the correct interpretation or significance of the 2020 MRI and EMG studies. But at least one physician believed the new tests justified surgical intervention given Plaintiff's treatment history, and the ALJ's failure to obtain medical input regarding the tests' impact on Plaintiff's functioning constitutes error. The case therefore must be remanded for further consideration of Plaintiff's physical RFC.

**2.      Remaining Arguments**

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review all aspects of Plaintiff's RFC and reconsider her subjective statements regarding her symptoms.

## CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the case is granted and the Commissioner's Motion for Summary Judgment [18] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: August 4, 2023

SHEILA FINNEGAN
United States Magistrate Judge